IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

NICHOLAS LINDLEY,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　　No. 1:14-00016
　　　　　　　　　　　　　　　　　　　　)　　　JUDGE HAYNES
R.R. DONNELLEY & SONS COMPANY, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)

## ~~JOINT PROPOSED~~ CASE MANAGEMENT ORDER *No 1-14*

Pursuant to the Orders of Court and Fed. R. Civ. P. 26(f), and in accordance with the

Court's practices as set forth in its Practice and Procedure Manual, the parties jointly submit the

following Proposed Case Management Order:

### I.　　Jurisdiction and Venue

This Court has federal jurisdiction pursuant to 28 U.S.C. §1331.

### II.　　Parties' Theories of the Case

#### 1.　Plaintiff's Theory of the Case

Plaintiff began his employment with Defendant in March 2010 through a temporary

staffing agency and was hired full-time as a Printing Press Operator 1. In or around September

12, 2010, Plaintiff's right foot caught the rubber mat when he stepped down backwards from a

press and lost his balance wherein Plaintiff twisted his right knee. Plaintiff was taken to the

doctor and given a list of restrictions. Plaintiff had arthroscopic surgery on his right knee in or

1

around July 14, 2011, and returned to work two weeks later with the restrictions of working only six hours and performing light duties.

Upon returning to work, Plaintiff provided his supervisor with his slip to return to work with restrictions. Plaintiff's supervisor told Plaintiff that with the type of surgery Plaintiff had, he should be able to return to full-duty at that time. Plaintiff advised he had six weeks of therapy still left, but Plaintiff's supervisor ignored Plaintiff and placed him back on the press that evening forcing Plaintiff to work against his restricted "light duty" orders.

In or around August 10, 2011, Plaintiff was working eight hour days, five days a week with a light duty assignment with customer service and the Project Management Department. Plaintiff was being harassed due to his restrictions and supervisors made statements consisting of: working Plaintiff's "ass to death" when he was removed from light duty; asking Plaintiff "what the f—k are you doing?" when he had to take a break because of his pain level; calling Plaintiff fat, slow, useless and lazy because he couldn't move quick with his knee; threatening Plaintiff's job if he did not properly perform his work responsibilities; and accused Plaintiff in December 2011 of starting a fire in the overhead hanging dryer to get out of working. Plaintiff's co-workers and supervisors would watch him, make comments and laugh at Plaintiff. Plaintiff had to wear a black under armor legging on his right leg to help with the pain throughout the day, and comments were made about Plaintiff wearing "women's panty hose." Plaintiff was embarrassed and humiliated by all of these events which continued until Plaintiff's termination.

By August 31, 2011, Plaintiff was returned to working on the press. A co-worker notice Plaintiff struggling with his job responsibilities and reported the incident to the OSHA Health/Safety Coordinator. Plaintiff was moved to a light duty position and advised he would be working six hours instead of eight due to his restrictions and when he was working on the

2

printing press that he was not to touch anything but to observe and learn. Plaintiff endured hostility when he would observe his co-workers at the press and told to get out of the way.

In or around February 28, 2012, Plaintiff was advised his shift would be going to twelve (12) hour shifts. Plaintiff asked his supervisor if he could have an accommodation of working eight hour shift a little longer and Plaintiff's supervisor laughed at him. Plaintiff never received another response to his request even though he asked supervisors and Human Resources on several occasions. Plaintiff was told in or around April 18, 2012, when he asked to leave early because of the pain he was feeling from the twelve hour shifts, that he would receive "points" against him for leave work early three times. In or around May 2, 2012, Plaintiff received his first write-up for unsatisfactory level of attendance from leaving early. Plaintiff received another write-up on May 11, 2012 and his final write-up on May 16, 2012, for instances of leaving early.

In or around May 19, 2012, Plaintiff was terminated for attendance. Plaintiff asked a final time for an accommodation prior to signing the termination papers but was denied. Plaintiff submits the reason for leaving early was used as a pretext for his termination, when in fact he was intentionally and unfairly discriminated against on the basis of his disability, requests for accommodations and for medical leave and use of leave pursuant to the Family Medical Leave Act.

## 2. Defendant's Theory of the Case

In March 2010, Donnelley hired Plaintiff as a Press Operator. In September 2010, he reported that he injured his knee at work. Thereafter Donnelley accommodated Plaintiff in numerous respects, consistent with restrictions imposed by his health care providers. Plaintiff's restrictions and, consequently, Donnelley's accommodations evolved over time, but continued for well over a year. At one point, Plaintiff's restrictions included working no more than eight

3

hours per day. Donnelley accommodated that restriction by allowing Plaintiff to work an eight hour shift rather than the 12 hours shifts that were in effect at the plant. In March 2012, Plaintiff's physician eliminated the eight hour restriction and released Plaintiff to work the full 12 hour shifts. Plaintiff nevertheless continued to leave work early on multiple occasions without permission or explanation. He was progressively disciplined and eventually terminated on May 17, 2012 pursuant to Donnelley's attendance policy. His September 2010 knee injury and subsequent FMLA leave had nothing to do with the termination decision, and Donnelley accommodated each of the restrictions imposed by Plaintiff's health care providers, indeed going well beyond what the law requires in terms of reasonable accommodation.

III.    Schedule of Pretrial Proceedings

A. Rule 26(a)(1) Disclosure

The parties shall make their initial disclosures by **April 16, 2014**.

B. <u>Meeting of Counsel and Parties to Discuss Settlement Prospects</u>

Ninety (90) days from the date of the entry of this Case Management Order, or by **June 16, 2014**, counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believe that one of the Alternative Dispute Resolutions ("ADR") procedures under the Local Rules would further assist the parties in resolving this matter.

## C. Other Pretrial Matters

As determined at the case management conference on March 17, 2014, this action is set for a jury trial on _Tuesday, May 26, 2015 at 9:00 a. m._.

If this action is to be settled, the Law Clerk shall be notified by noon, _Friday May 22, 2015_ If the settlement is reached thereafter resulting in the non-utilization of jurors, the costs of summoning jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held on _Monday, May 11, 2015 at 3:00 p. m._. A proposed pretrial order shall be submitted at the pretrial conference.

All discovery shall be completed by close of business on **October 17, 2014.** All written discovery shall be submitted in sufficient time so that the response shall be in hand by **September 12, 2014.** All discovery-related statements shall be filed by the close of business on **September 20, 2014.** No motions related to discovery or for a protective order shall be filed until a discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet, face-to-face, in an effort to resolve the dispute and a jointly signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

All dispositive motions shall be filed by the close of business on **December 19, 2014,** and any responses thereto shall be filed by **January 20, 2015.** Any reply shall be filed by **February 3, 2015.** Counsel shall e-mail memoranda of law and responses to statements of undisputed facts to the Court's chambers to Megan_Gregory@tnmd.uscourts.gov.

Any motion to amend the pleadings or join parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the

5

time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline.

There shall be no further stay of discovery pending disposition of any motions.

The response time for all written discovery and requests for admissions shall be thirty (30) days.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to thirty (30) such interrogatories. Subparts of a question shall be counted as additional questions for purposes of the overall number. In all other respects, Rule 33.01, Local Rules of Court (effective March 1, 1994) shall govern.

By the close of business on **August 15, 2014**, the Plaintiff shall declare to the Defendant (but not to be filed with the Court) the identity of their expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

By the close of business on **September 15, 2014**, the Defendant shall declare to the Plaintiff (but not to be filed with the Court) the identity of their expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

Any supplements to expert reports shall be filed by the close of business on **September 30, 2014.** There shall not be any rebuttal expert witnesses.

To reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses. A party may, however, serve contention interrogatories and requests for admissions upon another party's expert. If these discovery methods prove ineffective, a party may move to take the deposition of the expert. In a diversity action, a treating physician is considered a fact witness unless the physician expresses opinions beyond the physician's actual treatment of the party.

6

For expert witnesses, the expert's Fed. R. Civ. P. 26(a)(2) report is considered to be the expert's direct examination testimony at trial. If an expert expects to expound his or her testimony beyond the wording of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least 15 days prior to the dispositive motion deadline.

These rules on experts are to ensure full compliance with Rule 26(a)(2); to enable the parties to evaluate any Daubert challenges prior to filing dispositive motions; to avoid conflicts with the experts' schedules; and to avoid the costs of expert depositions.

Local Rule 12(c)(6)(c) (effective March 1, 1994) relating to expert witnesses shall apply in this action, and strict compliance is required.

It is so ORDERED.

ENTERED on this the ___ 24th ___ day of March, 2014.

WILLIAM J. HAYNES, JR.
United States Chief District Judge